UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**MIODRAG PLESHA,**

**Plaintiff,**

**v.**

**CHAD F. WOLF, SEC'Y OF U.S. DEP'T OF HOMELAND SEC.,**

**Defendant.**

**CIVIL NO. 20-1012 (GAG)**

## OPINION AND ORDER

Miodrag Plesha ("Mr. Plesha" or "Plaintiff") filed the above-captioned complaint against Chad F. Wolf, former[1] Secretary of the U.S. Department of Homeland Security ("DHS" or "Defendant"), alleging discrimination based on his national origin, gender, and age as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1963, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Notification and Federal Employee Anti-Discrimination and Retaliation Act of 2002, 5 U.S.C. § 2301 *et seq.* ("No FEAR Act"). (Docket No. 1). Plaintiff seeks compensatory damages and reinstatement into the Joint Terrorism Task Force, among other remedies. Id.

Presently before the Court is DHS' motion to dismiss the instant complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(1), (6). (Docket No. 20). Plaintiff opposed. (Docket No. 28). For the ensuing reasons, the Court **DENIES** DHS's motion to dismiss at Docket No. 20.

---

[1] Alejandro Mayorkas is the current Secretary of DHS when he was sworn in on February 2, 2021. See FED. R. CIV. P. 25(d).

**Civil No. 20-1012 (GAG)**

## I. Relevant Factual and Procedural Background

Mr. Plesha, a 51-year old male, who is of Croatian nationality, began working for DHS's Immigration and Customs Enforcement ("ICE") agency in January 2009 as a deportation officer assigned to ICE's Enforcement and Removal Operations ("ERO"). (Docket No. 1 ¶¶ 5, 9-10).

Around mid-September 2018, Mr. Plesha applied to the position of "temporary long-term detail" with the Federal Bureau of Investigations ("FBI")'s Joint Terrorism Task Force ("JTTF") whereby Mr. Plesha would serve a 4-year term as ICE's liaison. Id. ¶¶ 12-13. Mr. Plesha interviewed for the position with Homeland Security Investigations ("HSI") Group Supervisor ("HSI GS") Shea Warner ("Warner") who informed him that if he were to be selected, he would be under her immediate supervision and would also be required to work for HSI's Human Smuggling Group ("HSI HSG") in addition to the JTTF detail. Id. ¶ 14. In November of that same year, Mr. Plesha received an email informing him that he had been selected for the position by Jim Martin—Acting Field Office Director for the JTTF in San Juan, P.R. Id. ¶¶ 12-15.

On November 14, 2018, Mr. Plesha requested the office space that had been assigned to previous ICE liaisons with the JTTF and Assistant Field Office Director ("AFOD") Carmen Figueroa ("Figueroa") agreed to provide the office as soon as it was vacated. Id. ¶¶ 16, 18. About a week later, Mr. Plesha reached out to AFOD Figueroa to inquire about the vacant JTTF office space and inform her that he would be moving in, but she denied the move without an explanation. Id. ¶ 18.

On November 28, 2018, HSI GS Warner personally instructed Mr. Plesha during a meeting that she would be his immediate supervisor as part of the HSI HSG and added to the HSI HSG duty call roster. Id. ¶ 20. In addition, HSI GS Warner instructed him to immediately move into the HSI designated cubicle and join the HSI WhatsApp group-chat. Id. Mr. Plesha objected stating that the

aforementioned instructions were not part of the job description for the JTTF detail; nevertheless, he was willing to volunteer for HSI HSG tasks. (Docket No. 1 ¶¶ 21, 23). Moreover, Mr. Plesha also told her that he needed to clarify this misunderstanding with his ERO chain of command, for which HSI GS Warner responded, "she had discussed it already, and that it was clear and defined, and that [Mr.] Plesha should consider resigning the JTTF detail if not in agreement." Id. ¶ 21. HSI GS Warner also informed Mr. Plesha that if he were to continue with the JTTF detail, then his spouse—a forensic auditor in HSI GS Warner's office—would be moved and reassigned from said office. Id. ¶ 22. Mr. Plesha was also told to step down from his position as Union Steward[2] because he allegedly could not be part of a bargaining unit employee while on the JTTF detail. Id. ¶ 23. Lastly, HSI GS Warner presented to Mr. Plesha an interagency agreement, which had never before been mentioned, stating that HSI has oversight over ERO officers assigned to task forces. Id.

On December 17, 2018, Mr. Plesha reached a mutual agreement with AFOD Figueroa and Union representatives resolving the issues concerning his JTTF detail. Id. ¶¶ 26-28. Said agreement was reached after two meetings that were part of the collective bargaining agreement ("CBA")-negotiated grievance procedure. Id. The agreement determined that Mr. Plesha would be assigned the office of ICE's liaison with the JTTF as well as a take-home vehicle and would not be formally assigned to HSI HSG. Id. ¶ 28.

Two days later, HSI Task Force Officer Capriccioni asked Mr. Plesha to assist in nighttime surveillance. Id. ¶ 30. After Mr. Plesha accepted, HSI GS Warner confronted him in front of the entire HSI HSG as to the nighttime surveillance assistance that he had accepted and prohibited him from getting involved in any HSI assignments until HSI management cleared the issue with ERO

---

[2] The Union's name is "American Federation of Government Employees, ICE Local 527." (Docket Nos. 20 at 2; 20-1; 20-2).

management. (Docket No. 1 ¶ 30). During the interaction, HSI GS Warner instructed HSI JTTF agent Israel Aledo to cancel the scheduled meeting with Mr. Plesha's soon-to-be FBI supervisor. Id. ¶ 31. Mr. Plesha asked HSI GS Warner whether AFOD Figueroa informed her of the aforementioned mutual agreement to which she responded that she did not care of any ERO agreements and that Mr. Plesha would soon be informed of HSI's decision on this matter. Id.

Later that afternoon on December 19, Mr. Plesha received an email from AFOD Gareth Ripa ("Ripa") corroborating HSI GS Warner's decision, apologizing for making a mistake in the ERO-JTTF assignment, and requesting a "yes or no" answer on either declining the JTTF and returning to ERO or else resuming all duties with HSI HSG. Id. ¶ 32. The following day before Mr. Plesha responded to the email, he was removed from the HSI WhatsApp group-chat and had his access card privileges to the HSI premises revoked. Id. ¶ 33. Mr. Plesha has not had any further communications with HSI GS Warner since that interaction. Id.

The following day, AFOD Figueroa informed Mr. Plesha that HSI revoked his JTTF designation and that he would resume his previous duties. Id. ¶ 34. Mr. Plesha requested an explanation as to whom made the decision contravening the assurances of the mutual agreement and Supervisory Detentions and Deportations Officer ("SDDO") Ileana Aguilar stated, "I don't know . . . the higher management, possibly [AFOD Figueroa]." Id. ¶¶ 35-36.

Notwithstanding these events, Mr. Plesha applied to two job openings for SDDO in St. Thomas, U.S.V.I., and in San Juan, P.R., respectively. Id. ¶¶ 52-53. Although he was listed as qualified and referred to the selecting officer for the St. Thomas SDDO job opening, Mr. Plesha was neither given an interview nor a reason why none was granted. Id. ¶ 52. Moreover, Mr. Plesha was not selected for the SDDO position in San Juan after interviewing with AFOD Figueroa. Id. ¶ 53.

On April 2019, Mr. Plesha found out that two officers from Puerto Rico were instead promoted to the SDDO positions in San Juan. (Docket No. 1 ¶ 53).

In his complaint Mr. Plesha alleges he is the only foreign national employed with ICE in Puerto Rico and that his supervisors & managers are all female and younger than him. Id. ¶¶ 11, 44, 54. Mr. Plesha claims his coworkers call him "the Russian" and "the Ukrainian" in Spanish to associate him with communists and national socialists. Id. ¶ 44.

Defendant presently moves to dismiss all of Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(1), (6). (Docket No. 20).

## II.      Motion to Dismiss for Lack of Subject-Matter Jurisdiction: 12(b)(1)

### a.   Standard of Review

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Marrero v. Costco Wholesale Corp., 52 F. Supp. 3d 437, 439 (D.P.R. 2014). When considering a 12(b)(1) motion, the Court may consider all pleadings submitted by the parties. Aversa v. U.S., 99 F.3d 1200, 1210 (1st Cir. 1996). The Court "is not restricted to the face of the pleadings but may consider extra-pleading materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." Fernández Molinary v. Industrias La Famosa, Inc., 203 F. Supp. 2d 111, 114-15 (D.P.R. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 (1947). The pertinent inquiry is whether the challenged pleadings set forth allegations sufficient to demonstrate that the subject matter jurisdiction of the Court is proper. Marrero, 52 F. Supp. 3d at 439; Casey v. Lifespan Corp., 62 F. Supp. 2d 471, 474 (D.R.I. 1999).

The burden of proof in a 12(b)(1) motion falls on the party asserting jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942). In reviewing the motion, the Court must construe the complaint

liberally and the pleadings are to be taken as true and read in a light most favorable to the party opposing the motion. Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995); Brown v. Rhode Island, 160 F. Supp. 2d 233, 235 (D.R.I. 2001). Dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. Sumitano Real Estate Sales (N.Y.), Inc. v. Quantum Dev. Corp., 434 F. Supp. 2d 93, 95 (D.P.R. 2006).

### b. Discussion

Defendant argues that Plaintiff's invocation of the Union's CBA-negotiated grievance procedure precludes him from pursuing his claims in any other forum. (Docket No. 20 at 5-7). Defendant cites to 5 U.S.C. § 7121(d), which states: an aggrieved employee affected by a prohibited personnel practice under 5 U.S.C. § 2302(b)(1) (forbidding discrimination against employee based on national origin, gender, and age as well as retaliation) that also falls under the coverage of a CBA-negotiated grievance procedure may raise the matter under either a statutory or the CBA-negotiated procedure, but not both. An employee exercises his option to raise the matter under either the statutory or CBA-negotiated procedure when the employee either timely initiates an action under the applicable statutory procedure or timely files a grievance in writing and in accordance with the parties' CBA-negotiated procedure, whichever occurs first. 5 U.S.C. § 7121(d). The choice "between the statutory scheme or the negotiated grievance process is an irrevocable one." Romero-Pérez v. U.S. Dep't of Just., 780 F. Supp. 2d 162, 169 (D.P.R. 2011). Once the employee elects a procedure, then he or she must exhaust his or her claim in the chosen forum. See Stoll v. Principi, 449 F.3d 263, 265-66 (1st Cir. 2006).

Here, Plaintiff commenced the first step of the CBA-negotiated grievance procedure on November 21, 2018, when Mr. Plesha sent a written meeting request to AFOD Figueroa regarding his denial of the move into the vacant JTTF office space for ICE's liaisons. (Docket Nos. 1 ¶¶ 17-

18, 26-28; 20-1; 28 ¶¶ 6-8, 19). On December 17, Mr. Plesha met with AFOD Figueroa and reached a mutual agreement with ERO management through the CBA-negotiated grievance procedure determining that Mr. Plesha would be assigned the JTTF office as well as a take-home vehicle and would not be formally assigned HSI HSG tasks. (Docket No. 1 ¶¶ 26-28, 47). Then, on December 21, Plaintiff contacted EEO counselor Sabrina Noel regarding the discrimination and retaliation he endured when AFOD Figueroa, AFOD Ripa, and HSI GS Warner informed Mr. Plesha that HSI revoked his JTTF detail. (Docket No. 20-3 at 3). Subsequently, on January 14, 2019, Plaintiff filed the second step of the CBA-negotiated grievance procedure in connection with his revoked JTTF detail. (Docket Nos. 20-2; 28 ¶ 6). Afterwards, on April 5, 2019, Plaintiff filed the formal EEO complaint and raised Mr. Plesha's allegations of discrimination and retaliation in relation to the SDDO job openings in St. Thomas, U.S.V.I., and San Juan, P.R., for the first time. (Docket Nos. 20-3 at 4-20; 28 ¶¶ 18-19).

Thus, Plaintiff first elected to resolve his JTTF claims through the CBA-negotiated grievance procedure by filing a written grievance on November 21, 2018, which happened before Mr. Plesha filed his formal EEO complaint on April 5, 2019.[3] Plaintiff timely filed a written grievance in accordance with a CBA-negotiated procedure that permits resolving discrimination claims before initiating a statutory action. Consequently, Mr. Plesha must exhaust all administrative remedies established in the CBA-negotiated grievance procedure for the claims that stem out of Mr. Plesha's issues with the JTTF detail before they can be asserted in this Court.

Evidently so, when Plaintiff claimed multiple accounts of discrimination and retaliation originating from the JTTF detail in his EEO complaint, DHS/ICE Office of Diversity and Civil

---

[3] An election to proceed with the EEO Commission "is indicated only by the filing of a written complaint; use of the pre-complaint process . . . does not constitute an election[.]" 29 C.F.R. 1614.301(a).

Rights ("DHS/ICE ODCR") dismissed them pursuant to 29 C.F.R. § 1614.107(a)(4) because Mr. Plesha first raised these claims in a CBA-negotiated grievance procedure. (Docket No. 20-4 at 3-5); see also 29 C.F.R. § 1614.301(a). Nevertheless, DHS/ICE ODCR accepted his failure-to-promote and retaliation claims that spawn from the SDDO job openings in St. Thomas, U.S.V.I., and San Juan, P.R. (Docket No. 20-4 at 5).

After waiting one hundred-and-eighty (180) days, Plaintiff filed the instant complaint and subsequently exhausted his administrative remedies. (Docket Nos. 1 ¶ 2, 58). As noted by DHS/ICE ODCR, Plaintiff has the right to exhaust this administrative remedy by filing a civil action in this Court any time after one hundred-and-eighty (180) days have elapsed from the filing of the EEO complaint. (Docket No. 20-4 at 5-6).

Plaintiff's response clarifies that Plaintiff's discrimination and retaliation claims that stem out of the JTTF detail are not the subject of this action. (Docket No. 28 ¶¶ 6-8). Mr. Plesha is only advancing claims for failure-to-promote discrimination and retaliation claims that originate from the SSDO job applications, which emerged after the conclusion of the CBA-negotiated grievance procedure. Id. ¶¶ 6, 8, 12-13. "Plaintiff did mention his grievance procedure (which is different indeed of the discrimination and retaliation administrative charges [sic] filed in connection to the allegation submitted to this Court in this action) as a background information to establish that he indeed engaged in protected activity that warrants legal protection against retaliation." Id. ¶ 19.

Considering that Plaintiff's SDDO claims were raised for the first time in the EEO complaint, Mr. Plesha elected to proceed with the EEO administrative process instead of a CBA-negotiated grievance procedure and has properly exhausted his administrative remedy due to filing this legal action after one hundred-and-eighty (180) days. Consequently, Plaintiff's discrimination and retaliation claims arising out of the SDDO job openings may proceed in this forum.

### III. Motion to Dismiss: 12(b)(6)

#### a. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process using the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm'n., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Second, the Court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 679). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for

Case 3:20-cv-01012-GAG-MEL   Document 31   Filed 04/30/21   Page 10 of 14
Civil No. 20-1012 (GAG)

the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

Moreover, at the motion to dismiss stage, "the Court may consider: [1] 'implications from documents' attached to or fairly 'incorporated into the complaint,' [2] 'facts' susceptible to 'judicial notice,' and [3] 'concessions' in plaintiff's 'response to the motion to dismiss.'" Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (quoting Schatz, 669 F.3d at 55-56). At the Court's discretion, if it chooses to consider materials outside the pleadings, a motion to dismiss should be converted to a motion for summary judgment under FED. R. CIV. P. 56. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Under certain "narrow exceptions," some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). These exceptions include "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36 (quoting Watterson, 987 F.2d at 3).

b.  Discussion

Defendant argues that the facts alleged do not support a claim for either discrimination or retaliation for both the JTTF and the SDDO job openings. (Docket No. 20 at 8-9). The Court notes that Plaintiff abandoned his age and sex discrimination claims, limiting his action to his national origin discrimination and retaliation claims. (Docket No. 28 ¶ 49).

Title VII prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin," and provides a cause of action for discrimination as well as retaliation. 42 U.S.C. § 2000e-2(a)(1);

Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990). "National origin" refers to the country where a person was born or the country from which his or her ancestors came. Abravanel v. Starwood Hotels and Resorts Worldwide, Inc., 94 F. Supp. 3d 134, 142 (D.P.R. 2015) (citing Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973)). The plaintiff carries the initial burden under the statute of establishing a prima facie case of national origin discrimination. Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The prima facie case serves an important function in the litigation: it eliminates the most common non-discriminatory reasons for the plaintiff's rejection. Rivera v. DHL Solutions (USA), Civil No. 07-1950 (GAG), 2009 WL 1974289, at *2 (D.P.R. July 8, 2009) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

i. *Failure to promote/national origin discrimination*

Under the McDonnell Douglas framework, 411 U.S. at 802, plaintiff's initial burden of adducing a prima facie case of unlawful discrimination is to show that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him; (3) plaintiff was qualified for the employment he held; and (4) plaintiff's position remained open or was filled by a person whose qualifications were similar to his. See Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999); Abravanel, 94 F. Supp. 3d at 142. When a failure-to-promote claim constitutes the adverse employment action, the elements of the prima facie claim vary depending on the nature of the claim. Rivera, 2009 WL 1974289, at *3. Therefore, in order to prove his failure-to-promote claim, plaintiff must establish: (1) that he is a member or a protected class who (2) was qualified for an open position for which he applied, but (3) was rejected (4) in favor of

someone possessing similar qualifications. Id.; see also Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).

Defendant argues that Plaintiff cannot meet the third and fourth prongs of a prima facie failure-to-promote claim as it relates to the JTTF job opening. (Docket No. 20 at 8-9). Since the claims that develop out of Plaintiff's JTTF detail are not being litigated in this Court, see supra Part II, this argument is hence **MOOT**.

Turning to Plaintiff's claims from the SDDO job application, Defendant contends that Plaintiff "was not selected for the two vacancies because he was not the best candidate. Mr. Plesha failed to show any discriminatory/retaliatory animus for his non-selection and did not even allege if the selectees did not belong to a protected class and/or were unqualified for the position." (Docket No. 20 at 9). The Court disagrees with Defendant's argument. On its face, Plaintiff does establish a prima facie case of national origin discrimination. The Court finds that Plaintiff has shown that: (1) Mr. Plesha is of Croatian nationality, a protected class; (2) was qualified for the open SDDO positions that he applied due to his nine years of experience as a deportation officer; (3) was rejected from the same; (4) in favor of native deportation officers. Plaintiff's position is that Mr. Plesha was discriminated on account of his Eastern European origin when he was singled out and treated differently than comparable local deportation officers. (Docket No. 28 ¶ 10). As an example, Mr. Plesha recounts being called "the Russian" or "the Ukrainian" in the local language to associate him with communists and national socialists. Id. As the only foreign national working with ICE in Puerto Rico, Plaintiff claims the reason he was not promoted to SDDO was because of his Croatian nationality associating him with extremist groups from Eastern Europe. Plaintiff alleges he was treated differently than similarly qualified native deportation officers because Mr. Plesha has been labeled by his peers as an outcast, which has hindered his potential to obtain a promotion and

advance his career. Taking the factual allegations in the light most favorable to Plaintiff, Mr. Plesha meets his prima facie burden of a national origin failure-to-promote discrimination claim.

        ii.  *Retaliation*

Defendant posits that Plaintiff cannot establish a prima facie case of retaliation under Title VII. (Docket No. 28 at 9). Title VII makes it unlawful for an employer to retaliate against a person who has opposed discriminatory employment practices "or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. V. White, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)). To prove a claim of retaliation, a plaintiff must establish that he: (1) engaged in protected conduct under Title VII; (2) suffered a materially adverse employment action that harmed the plaintiff inside or outside the workplace enough to dissuade a reasonable worker from making or supporting a charge of discrimination, and; (3) that the adverse action taken against her was causally connected to his protected activity. Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009); see also Rodríguez-Candelario v. MVM Sec. Inc., 238 F. Supp. 3d 240, 254-55 (D.P.R. 2017). The First Circuit has repeatedly acknowledged that the plaintiff's prima facie burden is not onerous and is easily satisfied. Rodríguez-Candelario, 238 F. Supp. 3d at 255; see, e.g., Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 26 (1st Cir. 2004).

Defendant argues that Plaintiff cannot establish whether DHS carried out a materially adverse employment action nor can he establish a causal connection. (Docket No. 20 at 9). "Plaintiff has failed to show that the reassignment to his previous position was an adverse action. The Agency's decision not to continue with the JTTF detail was based on the needs of the Agency." Id. Again, the Court disagrees. The Court finds that: (1) Mr. Plesha engaged in protected conduct when he filed his written grievances opposing the discrimination he endured during his JTTF detail; (2)

**Civil No. 20-1012 (GAG)**

suffered a materially adverse employment action that would dissuade a reasonable worker from making accusations of discrimination when he was not selected for the vacant SDDO positions, and; (3) these denials are causally connected to the written grievances because AFOD Figueroa—interviewer for the SDDO position in San Juan, P.R.—knew about them and the same implication can be made for the selecting officer who decided not to interview Mr. Plesha for the SDDO position in St. Thomas, U.S.V.I. Consequently, Plaintiff meets his prima facie burden by alleging that he was not promoted to SDDO in retaliation for filing written grievances concerning the alleged national origin discrimination he endured during his short tenure with the JTTF.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss at Docket No. 20. Moreover, the Court lifts the stay of discovery proceedings at Docket No. 30. This case is referred to Magistrate Judge Marcos E. López for a further scheduling conference.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of April 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge